FILED
U.S DISTRICT COURT

2006 JUN 21  P 1:52

DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| SUNRISE VALLEY, LLC, and WESTERN ROCK, a dba of STAKER and PARSON COMPANIES, a Utah Corporation<br><br>Plaintiffs,<br><br>vs.<br><br>GALE NORTON, SECRETARY OF THE INTERIOR, BUREAU OF LAND MANAGEMENT, and UNITED STATES OF AMERICA<br><br>Defendants. | **OPINION**<br><br>Case No. 2:05-CV-00934<br><br>Judge Dee Benson |

## INTRODUCTION

Defendants, Gale Norton, U.S. Secretary of the Interior, the U.S. Bureau of Land Management ("BLM"), and the United States, pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss Plaintiffs' Quiet Title Act ("QTA") claim. Plaintiffs, Sunrise Valley, LLC, and Western Rock, are owners of real property conveyed by a patent issued in 1925 by the United States under the Stock-Raising Homestead Act ("SRHA"). Plaintiffs' SRHA patent reserves "coal and all other minerals" to the United States. In their claim, Plaintiffs ask this Court to quiet title in their favor to all of the sand, gravel, and rock on their property. Defendants argue that the United States Supreme Court has specifically addressed and rejected the Plaintiffs' legal claim and therefore Plaintiffs' entire action should be dismissed. The issue before the Court is whether sand, gravel, and rock found on Plaintiffs' lands qualify as minerals reserved to the United States pursuant to the SRHA.

## BACKGROUND

On April 10, 1925, the United States conveyed a tract of land to Plaintiffs' predecessor-in-interest. Located in the semiarid desert of southern Utah, part of the land includes large quantities of sand, gravel, and rock. The land was conveyed by Patent No. 957390, issued pursuant to the SRHA. As required by the SRHA, the patent reserved to the United States "all the coal and other minerals" in the land.

In June 1974, Western Rock acquired title to a portion of the land covered by the 1925 patent and immediately began removing sand, gravel, and rock from the surface estate. Western Rock alleges that it continued to exercise ownership over the property by operating an open pit sand and gravel operation until 1999 when the United States first claimed an ownership interest in the sand, gravel, and rock on Western Rock's property.

Ned Sullivan, a lifetime farmer, also owned a portion of the property conveyed by the 1925 patent. In 2003, Mr. Sullivan sold a portion of this property to Sunrise Valley, LLC. When Sunrise Valley learned from the BLM that Sunrise Valley could not extract the rock, sand, and gravel on the property, Sunrise Valley brought this suit disputing the BLM's ownership claim over the rock, sand, and gravel on its property.

## DISCUSSION

In Watt v. Western Nuclear, 462 U.S. 36 (1983), the U.S. Supreme Court unmistakably held that gravel constitutes a mineral reserved to the United States in SRHA-patented lands. In Western Nuclear, the defendant owned lands granted under an SRHA patent, which reserved to the United States "all the coal and other minerals" in the land. See id. at 39. The BLM ruled that the defendant committed unintentional trespass by removing 43,000 cubic yards of gravel from

2

its SRHA-patented land. See id. at 40–41. The defendant contested the ruling, arguing that gravel was not included within the reservation of minerals to the United States under the SRHA. Id. The U.S. Supreme Court rejected the defendant's argument, holding that "gravel is a mineral reserved to the United States in lands patented under the SRHA," id. at 60, because gravel (1) is mineral in character; (2) can be removed from the soil; (3) can be used for commercial purposes; and (4) there is no reason to suppose gravel was intended to be included in the surface estate. Western Nuclear, 462 U.S. at 53–54. The Court explained that the congressional purpose of reserving mineral rights under the SRHA was "to facilitate the concurrent development of both surface and subsurface resources." Id. at 42. Because "ranching and farming do not ordinarily entail the extraction of mineral substances," id. at 54, and because Congress understood that surface lands were patented "chiefly . . . for grazing and raising forage crops . . . for the support of a family," id. at 38, the Court found that it was best able to honor the congressional purpose of the SRHA by construing the mineral reservation to encompass gravel. Id. at 47.

This case is controlled by Watt v. Western Nuclear, 462 U.S. 36 (1983). As in Western Nuclear, Plaintiffs acquired title to land covered by an SRHA patent, which reserved to the United States "all the coal and other minerals" in their land.

Notwithstanding the Supreme Court's ruling in Western Nuclear, Plaintiffs maintain that Congress did not intend to reserve the sand, gravel, and rock on their SRHA-patented land because: (1) Congress did not consider sand, gravel, and rock to be mineral in character when the Plaintiffs' patent was issued in 1925; (2) the sand, gravel, and rock on Plaintiffs' SRHA-patented lands, though technically removable from the soil, are so pervasive that they cannot be removed from the soil within the meaning of the SRHA; (3) sand, gravel, and rock could not be used for commercial purposes in 1925; and (4) sand, gravel, and rock were intended to be included in the

3

surface estate conveyed by Congress under the SRHA patent.

The Court finds no support for Plaintiffs' argument. Plaintiffs' claim that Congress did not consider sand, gravel, and rock to be mineral in character in 1925 was addressed by the Supreme Court in Western Nuclear. The Court held that Congress considered gravel to be mineral in character when it passed the SRHA in 1916. Western Nuclear, 462 U.S. at 60. The Supreme Court's interpretation of minerals applies to all SRHA patents, regardless of their date of issue. Plaintiffs' second claim that sand, gravel, and rock are so pervasive that they cannot be removed from soil is also refuted by Western Nuclear. The Court stated that its finding that minerals such as gravel can be removed from the soil "further[s] Congress' overriding objective of facilitating the concurrent development of surface and subsurface resources." Id. at 56. Additionally, Plaintiffs' assertion that sand, gravel, and rock cannot be used for commercial purposes is inconsistent with Western Nuclear, where the Court ruled that "gravel can be taken from the soil and used for commercial purposes." Id. at 55. Finally, Plaintiffs' assertion that sand, gravel, and rock were intended to be included in the surface estate conveyed by Congress under the SRHA was flatly and unmistakably rejected by the Western Nuclear Court. Id. at 55–56. ("Congress certainly could not have expected that homesteaders . . . would have the interest in extracting deposits of gravel from SRHA lands[.]").

Plaintiffs argue that Western Nuclear is not applicable because it was essentially overruled by the concurring opinion in BedRoc Ltd., LLC v. United States, 541 U.S. 176, 187 (2004). At issue in Bedroc was land patented under the Pittman Underground Water Act of 1919, a statute pertaining only to Nevada that reserved "all valuable minerals" to the United States on lands patented thereunder. Id. at 176. The Bedroc Court held that the reservation of minerals under the Pittman Act did not reserve sand and gravel to the United States since sand

4

and gravel were not "valuable mineral[s]."[1] On this basis, Plaintiffs argue that the continued viability of Western Nuclear is "highly questionable."

Plaintiffs' interpretation of Bedroc is misguided. Although the petitioners in Bedroc asked the Supreme Court to overrule Western Nuclear, the plurality refused this request, stating specifically that "we decline to overrule our recent [Western Nuclear] precedent." Bedroc, 541 U.S. at 183. In his concurrence, while Justice Thomas criticized the holding in Western Nuclear, he specifically declined to overrule Western Nuclear "[b]ecause the Government identifies significant reliance interests that would be upset" by doing so. Id. at 189. The dissent also refused to overrule Western Nuclear, stating that although "the majority in Western Nuclear may have misinterpreted Congress' intent," id. at 192, there does not exist adequate justification for disturbing a decision that has been settled law for two decades. Id. Thus, the Bedroc Court unanimously decided **not** to overrule Western Nuclear.

Based on the U.S. Supreme Court's rulings in Watt v. Western Nuclear, 462 U.S. 36 (1983), and Bedroc, Inc. v. United States, 541 U.S. 176 (2004), the Court grants Defendants' motion to dismiss.

---

[1] The plurality reached its holding without overturning Western Nuclear by distinguishing the text of the Pittman Act's mineral reservation from that of the SRHA. Specifically, it stated that the "SRHA's mineral reservation was identical to the Pittman Act's in every respect save one: Whereas the SRHA reserved to the United States 'all the coal and other minerals,' the Pittman Act reserved 'all the coal and other **valuable** minerals.'" BedRoc Ltd., LLC v. United States, 541 U.S. 176, 187 (U.S. 2004) (emphasis added). Because Congress "textually narrowed the scope of the term [minerals] by using the modifier 'valuable,'" id. at 182, the Court held that Congress "did not intend to include sand and gravel in the Pittman Act's mineral reservation." Id.

## CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion to dismiss. IT IS SO ORDERED.

Dated this 20th day of June, 2006.

*[signature]*

United States District Judge
Dee Benson